UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

ROSALBA CARRILLO ROMERO,　　　　　　　　　　　　　　　　　　　Petitioner,

v.　　　　　　　　　　　　　　　　　　　　　　　　　Civil Action No. 4:25-cv-188-DJH

PAMELA BONDI, U.S. Attorney General et al.,　　　　　　　　　　　　　　　　Respondents.

\* \* \* \* \*

## MEMORANDUM AND ORDER

Rosalba Carrillo Romero, a noncitizen resident of Minnesota currently detained in the Western District of Kentucky, petitions the Court for a writ of habeas corpus, alleging that she has been unlawfully detained under the Immigration and Nationality Act and in violation of due process. (Docket No. 1)  Respondents, various government officials and agencies involved in enforcing immigration laws, oppose Romero's petition. (D.N. 9)  The parties waived an evidentiary hearing in this matter. (D.N. 7; D.N. 8)  For the reasons explained below, the Court will grant Romero's petition and order her immediate release.

**I.**

Romero is a native and citizen of Mexico. (D.N. 1, PageID.10 ¶ 31; D.N. 9, PageID.49)  She is a resident of St. Paul, Minnesota. (D.N. 1, PageID.5, ¶ 14)  Romero first entered the United States without inspection in June 2005. (*Id.*, PageID.10 ¶ 32)  She left the country in August 2007 and re-entered in September 2007, again without inspection. (*Id.* ¶¶ 32–33)  She has remained in the United States since that time. (*Id.* ¶ 32)  On February 10, 2020, the U.S. Department of Homeland Security (DHS) initiated removal proceedings against Romero. (*Id.* ¶ 34)  Romero was granted bond while those proceedings were pending. (*Id.*)  On February 12, 2023, the immigration

1

court dismissed the removal proceedings against Romero. (*Id.*) On December 12, 2025, Respondents took Romero into custody. (*Id.* ¶ 35)

Romero is currently detained at the Grayson County Detention Center in Leitchfield, Kentucky. (*Id.*, PageID.5 ¶ 14; D.N. 1-2) She has not been provided with a bond hearing. (D.N. 1, PageID.10–11 ¶¶ 36–37) She petitions the Court for a writ of habeas corpus against U.S. Attorney General Pamela Bondi, the Department of Homeland Security, DHS Secretary Kristi Noem, Immigration and Customs Enforcement (ICE), Acting ICE Director Todd Lyons, the Executive Office of Immigration Review (EOIR), EOIR Director Daren Margolin, and Chicago ICE Field Office Director Samuel Olson. (*Id.*, PageID.5–7 ¶¶ 15–22) Respondents maintain that Romero is lawfully detained under 8 U.S.C. § 1225, not § 1226, and thus has been provided all the process to which she is entitled. (*See* D.N. 9, PageID.49–50)

**II.**

**A.     Lawfulness of Detention**

Romero asserts that she falls under § 1226(a), not § 1225(b)(2), and thus is not subject to mandatory detention. (D.N. 1, PageID.23 ¶ 66) Respondents argue that § 1225 governs her detention, incorporating by reference arguments made in an appellate brief in *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025), *appeal docketed*, No. 25-1965 (6th Cir. Oct. 27, 2025). (*See generally* D.N. 9-1)

Respondents' arguments are nearly identical to those made in *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025), *appeal docketed*, No. 25-6167 (6th Cir. Dec. 29, 2025). The Court thus summarizes and incorporates by reference its reasoning and determination from *Alonso*. There, the Court found that the petitioner was an applicant for admission as an "alien present in the United States who ha[d] not been admitted," *id.* at *5 (quoting

2

§ 1225(a)(1)), but that he was not seeking admission because he had resided in the United States for an extended period. *See id.* at *5, *7. The Court concluded that the petitioner was detained under § 1226(a), and thus entitled to a bond hearing, because he was "arrested and detained [on a warrant issued by the Attorney General] pending a decision on whether [he was] to be removed from the United States."[1] *Id.* at *5 (quoting § 1226(a)); *id.* at *8.

Respondents argue that § 1225(b)(2) applies "regardless of the duration of the alien's presence in the United States, the alien's distance from the border when apprehended, or any affirmative acts taken to secure lawful status or relief." (D.N. 9-1, PageID.83) The Court disagrees, having previously concluded that "[t]he phrase 'seeking admission,' though not defined in [§ 1225], 'implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.'" *Alonso*, 2025 WL 3083920, at *6 (quoting *Lopez-Campos*, 2025 WL 2496379, at *6). Respondents also argue that § 1225 "makes clear that an alien who is an 'applicant for admission' necessarily is 'seeking admission.'" (D.N. 9-1, PageID.84 (citation omitted)) The Court has likewise rejected this argument, explaining that "not all applicants for admission are automatically seeking admission," *Alonso*, 2025 WL 3083920, at *6, and that "the Court must . . . give effect to all words in a statute." *Id.* at *7 (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)); *see also Ramirez v. Lewis*, No. 4:25-cv-143-RGJ, 2025 WL 3553676, at *8 (W.D. Ky. Dec. 11, 2025) ("Reading [§ 1225] as the United States contends would either ignore the plain meaning of 'seeking' . . . or, more simply, [read out] 'seeking' directly from the statute." (emphasis omitted)).

---

[1] For individuals arrested under § 1226(a), an immigration officer makes an initial custody determination; the noncitizen may then request a custody redetermination (via a bond hearing) before an immigration judge. *Alonso*, 2025 WL 3083920, at *5 (citations omitted)

3

Respondents additionally argue that their position "does not render Section 1226(c) superfluous." (D.N. 9-1, PageID.84) They claim that "[a]lthough Section 1226(c) and Section 1225(b)(2) overlap for some aliens, each provision has independent effect." (*Id.*, PageID.101) As the Court explained in *Alonso*, the recent amendment to § 1226, codified in § 1226(c)(1)(E), "applies to noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A) and who have been charged with, arrested for, or convicted of 'burglary, theft, larceny, shoplifting, or assault of a law enforcement officer . . . , or any crime that results in death or serious bodily injury to another person.'"   2025 WL 3083920 at *6 (quoting § 1226(c)(1)(E)(ii)).   "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (citation omitted). Thus, despite overlap between § 1225(b) and § 1226(c) regarding noncitizens who have not been admitted or paroled, the Court concludes that Respondents' reading of § 1225 would render § 1226(c) superfluous. *See id.* ("[B]ecause an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted [under § 1225(b)(2)(A)],' ICE would never need to rely on § 1226(c)(1)(E) to detain them." (citations omitted)).[2]

---

[2] Respondents also maintain that their position is consistent with the Supreme Court's opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). (*See* D.N. 9-1, PageID.108–10) *Jennings* considered whether §§ 1225(b), 1226(a), and 1226(c) require periodic bond hearings for noncitizens detained under those provisions. *See* 583 U.S. at 286, 291. As Respondents note, "the Supreme Court [in *Jennings*] did not rule on whether non-admitted or inadmissible aliens fell within Section 1226(a) as opposed to Section 1225(b)(2)(A)." (D.N. 9-1, PageID.110) Whether Respondents' position is consistent with *Jennings* is thus not dispositive here. In any event, *Jennings* stated that "§ 1226 applies to aliens already present in the United States[, and §] 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their

Consistent with its prior decisions addressing the same issue, the Court concludes that Romero is detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing. *See Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *5 (W.D. Ky. Nov. 26, 2025); *Salinas v. Woosley*, No. 4:25-cv-121-DJH, 2025 WL 3243837, at *3 (W.D. Ky. Nov. 20, 2025); *Lopez v. Olson*, No. 3:25-cv-654, 2025 WL 3217036, at *3 (W.D. Ky. Nov. 18, 2025); *Alonso*, 2025 WL 3083920, at *4–8; *Navarrete v. Noem*, No. 4:25-cv-157-DJH, 2025 WL 3298081, at *2–3 (W.D. Ky. Nov. 26, 2025).

**B.    Due Process**

Romero further asserts that her detention violates due process under the Fifth Amendment. (D.N. 1, PageID.23 ¶ 66)  Respondents argue that "Section 1225(b)(2) does not afford Petitioner the ability to obtain release on bond, and so the Due Process Clause does not either."  (D.N. 9-1, PageID.111)    Because Romero is detained under § 1226, not § 1225, as explained above, Respondents' argument as to the due process required by § 1225(b)(2) is irrelevant.[3] *Singh*, 2025 WL 3298080, at *5.

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam)

---

arrest and detention pending removal proceedings." 583 U.S. at 303. The opinion also described § 1225(b)(1) and (b)(2) as "authoriz[ing] the [g]overnment to detain certain aliens seeking admission into the [United States]." *Id.* at 289 (emphasis added). Thus, the Court's reading of the relevant statutes is consistent with *Jennings*.

[3] Respondents additionally cite *Demore v. Kim*, 538 U.S. 510 (2003), for the proposition that "statutory provisions denying bond during administrative removal proceedings do not violate the due process clause." (D.N. 9-1, PageID.111)  But *Demore* concerned whether § 1226(c)'s mandatory-detention framework required individualized bond hearings for removable noncitizens who had "been convicted of one of a specified set of crimes." 538 U.S. at 513. Because § 1226(c) is not at issue here, the Court does not find *Demore* relevant to the due process analysis.

(citation omitted).  To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at *8 (citing *Barrera v. Tindall*, No. 3:25-cv-5441-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025)).  Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Romero "has a significant private interest in not being detained." *Id.*; *Singh*, 2025 WL 3298080, at *6; *Alonso*, 2025 WL 3083920, at *9.  Moreover, "the risk of erroneously depriving [Romero] of [her] freedom is high if the [immigration judge] fails to assess [her] risk of flight and dangerousness." *Lopez-Campos*, 2025 WL 2496379, at *9; *see* 8 C.F.R. § 1236.1(c)(8), (d)(1).  Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Barrera*, 2025 WL 2690565, at *7 (citation omitted).  But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite*, 2025 WL 2829511, at *15.  Thus, because all three *Mathews* factors weigh in Romero's favor, the Court concludes that her detention violates her due process rights. *See Ramirez*, 2025 WL 3553676, at *12; *Singh*, 2025 WL 3298080, at *5–6; *Barrera*, 2025 WL 2690565, at *6–7.

6

## III.

For the reasons stated above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Romero's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Romero, and, if she is arrested and re-detained, provide her with a bond hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a). The United States **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **Friday, January 2, 2026**.

(2) Upon receipt of the notice of compliance, this matter will be **CLOSED**.

December 30, 2025

David J. Hale, Chief Judge
United States District Court